UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXEY M. K.,[1]<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL,<br><br>    Defendant. | Case No. 18-cv-03149-TSH<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 18, 28 |

## I. INTRODUCTION

Plaintiff Alexey K. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Nancy A Berryhill, then-Acting Commissioner of Social Security,[2] denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. ECF Nos. 18 (Pl.'s Mot.), 28 (Def.'s Mot.). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **GRANTS** Plaintiff's motion and **DENIES** Defendant's cross-motion for the following reasons.

## II. BACKGROUND

### A. Age, Education and Work Experience

Plaintiff is 50 years old. AR 202. He has a Bachelor of Science in Kinesiology. AR 48.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] This action was originally brought against Acting Commissioner Nancy Berryhill. Pursuant to Fed. R. Civ. Proc. 25(d), Andrew M. Saul was automatically substituted as the Defendant.

1  He has partially completed the requirements for a Bachelor's degree in Theology. AR 58. He has
2  experience working as a caregiver at Home Instead Senior Care. AR 49. Plaintiff worked there
3  full time until he transitioned to part time work because he started to require more and more
4  breaks in between his duties. *Id.* Eventually, he had to quit altogether. *Id.* Prior to working as a
5  caregiver he did temporary work through the California Employer Group. AR 50. While doing
6  temp work, he never had a job that lasted more than a month. *Id.* Plaintiff was also in the Army
7  Reserves and was stationed in Kuwait around 2003 as a chaplain's assistant. AR 50-51. Prior to
8  that he was an avionics tech with the Marines, "fixing black boxes." AR 51-52.

**B.     Medical Evidence**

    **1.     Dr. Marat**

On November 6, 2014, Olga Marat, M.D., became Plaintiff's primary care physician. AR 354-55. On November 21, 2014, Dr. Marat indicated a diagnosis of pain in the joint involving the pelvic region and thigh. AR 273. On the same day, she obtained Plaintiff's informed consent for long-term opioid therapy for pain. AR 327.

On May 17, 2016, Dr. Marat filled out a questionnaire regarding Plaintiff's functional limitations. AR 1700-04. In the form, Dr. Marat indicated that she had seen Plaintiff three to four times a year for two years. AR 1700. She diagnosed him with diabetes mellitus Type II, chronic back pain, lumbosacral spondylosis, sacroiltis, and chronic depression. *Id.* Dr. Marat stated that Plaintiff's lower back pain and hip pain radiated to his lower left leg and were triggered by sitting or standing in the same position. *Id.* She further noted that Plaintiff's pain would occasionally interfere with his attention and concentration. AR 1701. Dr. Marat estimated that Plaintiff could sit for one hour at a time for a total of four hours in an eight-hour day, and stand for 10 minutes at a time for a total of less than two hours in an eight-hour day. AR 1702. Dr. Marat also noted that Plaintiff needed to walk for five minutes every hour, shift positions, and would need to take two to three unscheduled breaks for five to ten minutes at a time. *Id.* Dr. Marat assessed Plaintiff's lifting and carrying limitations to occasionally 20 pounds, but frequently 10 pounds, and noted he could engage in occasional postural limitations, except never twist or crouch and squat. AR 1703. She stated that he would likely be absent from work three or more days per month. She also stated

that Plaintiff had these symptoms for two or more years. *Id.*

## III. SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On September 9, 2014, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on December 31, 2009 but later amended his onset date to March 15, 2013, which is the day after a prior adverse decision by a different ALJ concerning Plaintiff's 2010 application for disability benefits. AR 16, 18, 66-67, 202-203, 219.

On April 8, 2015, the Social Security Administration ("SSA") denied Plaintiff's claim, finding Plaintiff did not qualify for disability benefits. AR 126-130. Plaintiff subsequently filed a request for reconsideration, which was denied on July 2, 2015. AR 132-36. On July 9, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 138-139. ALJ Serena S. Hong conducted a hearing on February 7, 2017. AR 41. Plaintiff testified in person at the hearing and was represented by a non-attorney representative, Dan McCaskill. *Id.* The ALJ also heard testimony from Vocational Expert ("VE") Lorian Ink Hyatt. *Id.*

### A. Plaintiff's Testimony

At the hearing on February 7, 2017 Plaintiff testified that he was unable to work due to "flareups." AR 51. Specifically, he noted that "it's because of physical symptoms or because of my depression, I mostly – I mostly lay down." *Id.* He testified that at his first ALJ hearing conducted in 2013 he only claimed back problems because he was "embarrassed" to claim depression. AR 52-53. He stated that this time around he claimed depression because it has impacted the whole reason why he was a "recluse." AR 53. He stated that he was seeing a psychiatrist at the VA who prescribed him medication. AR 54. The medication helped but it caused him drowsiness and difficulty in concentrating. *Id.* He also testified that he had trouble reading and had started using glasses. AR 54-55. He testified that he had a detached retina and had floaters from migraines. AR 55. He added that he suffered from depression and anxiety. AR 62.

For his back pain Plaintiff had been seeing Dr. Marat. AR 55. He was taking a muscle relaxant, Pregabalin and Vicodin. *Id.* He experienced drowsiness and forgetfulness as a side effect of taking the medication. *Id.* Plaintiff proffered that he is "just not plugged in. I'm not –

3

it's – there's pain, and so a lot of times I'll wake up with even a greater amount of pain. But I can only – I can only sit for like an hour at a time and then I have to lie down or put my foot up at least." AR 55-56. He also experienced "a debilitating fear of pain." AR 56. He could stand for only ten minutes at a time and could sometimes walk half a mile or so. *Id.* He could not walk further due to pain, imbalance, and a "lack of control in the joint sometimes" in the left hip. *Id.* He also had trouble lifting. AR 61. He could lift 10 pounds on a regular basis. *Id.*

**B.     Vocational Expert's Testimony**

During the hearing, the ALJ asked the VE whether a hypothetical individual that is the same age, education and past experience as Plaintiff (1) who was further limited to light exertional level, but could only stand/walk for two hours in an eight-hour workday; (2) who was limited to occasional postural activities such as stooping, crouching, crawling; (3) who must avoid concentrated exposure to hazards and unprotected heights; (4) and who was further limited to performing simple routine tasks with only occasional interaction with coworkers, supervisors and the public, could perform Plaintiff's past relevant work. AR 69-70. The VE responded that such an individual could not perform any of Plaintiff's past relevant work, but that such an individual could perform the alternate occupations of document specialist in the Dictionary of Occupational Titles ("DOT") at 249.587-018, addressing clerk in the DOT at 209.587-010, and semiconductor loader in the DOT at 726.687-030. AR 69-70. The VE confirmed that her testimony was consistent with the DOT, as well as her labor market experience of more than 40 years. AR 71.

**C.     ALJ's Decision and Plaintiff's Appeal**

On July 24, 2017, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. AR 25. The ALJ stated that the updated evidence (since the March 14, 2013 ALJ decision) did not establish that Plaintiff's condition had worsened subsequent to the prior hearing decision and the presumption of non-disability applied and thus, the previous findings of the ALJ were adopted except as supplemented or amended as stated in the new decision. AR 16, 18. This decision became final when the Appeals Council declined to review it on April 11, 2018. AR 1-6. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On December 27, 2018, Plaintiff filed the present Motion for

Summary Judgment. On April 16, 2019, Defendant filed a Cross-Motion for Summary Judgment.

## IV. STANDARD OF REVIEW

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). An ALJ's decision to deny benefits must be set aside only when it is "based on legal error or not supported by substantial evidence in the record." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It requires "more than a mere scintilla," but "less than a preponderance" of the evidence. *Id.*; *Trevizo*, 871 F.3d at 674.

The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo,* 871 F.3d at 675 (citation and quotation marks omitted). However, "[w]here evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* at 674-75 (citation and quotation marks omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation and quotation marks omitted).

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* (citation and quotation marks omitted). A court may not reverse an ALJ's decision because of a harmless error. *Id.* at 1111 (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* (citation and quotation marks omitted).

## V. DISCUSSION

**A. Framework for Determining Whether a Claimant Is Disabled**

The regulations promulgated by the Commissioner of Social Security provide for a five-

5

step sequential analysis to determine whether a Social Security claimant is disabled.[3] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined Plaintiff had not performed substantial gainful activity from his amended alleged onset date of March 15, 2013 through his date of last insured of December 31, 2014. AR 18.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairments: depression, anxiety, back disorder, and left hip dysfunction. AR 19. Further, obesity was noted in the medical evidence of record, and therefore the ALJ considered "the claimant's obesity along with his other impairments." *Id.*

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the

---

[3] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

6

criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 19.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined Plaintiff has the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) except that Plaintiff could engage in occasional postural activities, such as stooping, kneeling, crouching, and crawling; he must avoid concentrated exposure to hazards; and he was capable of simple, routine tasks with occasional interaction with coworkers, supervisors and the public. AR 20.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4) (iv). Here, the ALJ determined Plaintiff could not perform past relevant work. AR 24.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpt. P, App. 2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, the ALJ determined that there were other unskilled, sedentary type jobs in the national economy that Plaintiff could perform, including document specialist, addressing clerk, and semiconductor

1  loader. AR 25.

## B. Plaintiff's Arguments

Plaintiff raises two arguments challenging the ALJ's decision. First, Plaintiff argues that the ALJ failed to identify a significant number of jobs that Plaintiff could perform within his RFC. Second, he contends that the ALJ failed to articulate specific and legitimate reasons for rejecting the opinions of Dr. Marat, Plaintiff's treating physician. The Court considers each argument in turn.

## C. Identification of Jobs Consistent with the RFC

The ALJ determined that Plaintiff retained the RFC to perform some sedentary work. AR 24. The ALJ noted that "if the claimant had the residual function capacity to perform the full range of sedentary work, a finding of 'not disabled' would be required," AR 24, but she found that "the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations." *Id.* The ALJ relied on the VE's testimony that someone with Plaintiff's limitations could perform the requirements of document specialist, addressing clerk and semiconductor loader. AR 25. The ALJ characterized these as "representative occupations," *id.*, as if they were examples from a longer list, but there is no evidence in the record of any other examples, and no others were mentioned by either the VE or the ALJ. AR 25, 70.

Plaintiff argues these examples don't cut it and that the ALJ failed to identify a significant number of jobs that Plaintiff could perform within his RFC. Pl.'s Mot. at 5-8. For the document specialist job, Plaintiff argues that per *Zavalin v. Colvin*, 778 F.3d 842 (9th Cir. 2015), the ALJ failed to recognize the conflict between the RFC for simple, routine tasks and reasoning level 3 occupations. Pl.'s Mot. at 6. Next, Plaintiff takes issue with the addresser job by contending it is obsolete. *Id.* at 7. As to the semiconductor loader job, Plaintiff states he cannot perform the occupation because he must avoid concentrated exposure to hazards, which would not be possible in a job where workers are exposed to toxic caustic chemicals for up to one-third of the workday. *Id.* at 8.

In response, Defendant argues that this case differs from *Zavalin* because the claimant in *Zavalin* had been in special education classes throughout childhood and graduated with a modified

8

diploma, whereas Plaintiff has a Bachelor of Science in Kinesiology and has at most moderate limitations in understanding, remembering information, concentration, persistence and pace. Def.'s Mot. at 4. Further, Defendant contends that the ALJ found Plaintiff's mental health treatment "did not reveal significant mental limitations (other than mild depression), as he had intact judgment, memory was reliable and there was no evidence of thought disorder (AR 21, 370, 779, 781, 787, 793, 795, 804, 1046)." *Id.* at 4-5. Defendant also asserts that in addition to the case differing from *Zavalin,* the ALJ "identified two other jobs that are consistent with simple, routine work and SVP 2 and reasoning level 2 jobs, such as addressing clerk and semiconductor loader." *Id.* at 5. In responding to Plaintiff's argument that the addresser job is obsolete, Defendant contends that "the study that Plaintiff cites is not a source of job information that the Commissioner considers when determining whether a claimant can perform other work." *Id.* at 5. As to Plaintiff's argument that the semiconductor loader position requires exposure to hazards that the VE did not consider, Defendant contends there is no merit to that argument as the ALJ included the restriction in the hypothetical posed to the VE. *Id.* at 6.

### 1. Legal Standard

RFC is the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed by considering all the relevant evidence in a claimant's case record. *Id.*; *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). When a case is before an ALJ, it is the ALJ's responsibility to assess a claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

### 2. Analysis

#### a. Document Specialist

As the Ninth Circuit explained in *Zavalin*, in step five, "[t]he ALJ . . . considers potential occupations that the claimant may be able to perform. In making this determination, the ALJ relies on the [Dictionary of Occupational Titles], which is the SSA's 'primary source of reliable job information' regarding jobs that exist in the national economy." 778 F.3d at 845-46 (citations omitted). "The DOT describes the requirements for each listed occupation, including the

9

necessary General Educational Development ('GED') levels; that is, 'aspects of education (formal and informal) . . . required of the worker for satisfactory job performance.' The GED levels includes the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most)." *Id*. (citations omitted). "In addition to the DOT, the ALJ relies on the testimony of vocational experts who testify about specific occupations that a claimant can perform in light of his residual functional capacity." *Id*. (citation omitted).

"When there is an apparent conflict between the vocational expert's testimony and the DOT – for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle – the ALJ is required to reconcile the inconsistency." *Id*. at 846 (citation omitted). "The ALJ must ask the expert to explain the conflict and then determine whether the vocational expert's explanation for the conflict is reasonable before relying on the expert's testimony to reach a disability determination." *Id*. (citations and quotation marks omitted). "The ALJ's failure to resolve an apparent inconsistency may leave us with a gap in the record that precludes us from determining whether the ALJ's decision is supported by substantial evidence." *Id*. (citation omitted).

The Ninth Circuit went on to explain "that there is an inherent inconsistency between [a] limitation to simple, routine tasks, and the requirements of Level 3 Reasoning." *Id*. The Court noted that Level 2 Reasoning involves "[a]pply[ing] commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id*. at 847. By contrast, Level 3 Reasoning involves "[a]pply[ing] commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Id*. Comparing those two definitions, the Court found "the conflict to be plain" "between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." *Id*.

In response, the Commissioner argued that the DOT's reasoning levels correspond only to a person's level of education and that the claimant was presumptively capable of Level 3

Reasoning because he completed high school. *Id*. The Court rejected that argument, finding that "the DOT's reasoning levels clearly correspond to the claimant's *ability* because they assess whether a person can 'apply' increasingly difficult principles of rational thought and 'deal' with increasingly complicated problems." *Id*. (emphasis original). The Court added that on the facts of that case, while the claimant had completed high school, he had been in special education classes and graduated with a modified diploma. *Id*.

*Zavalin* controls the outcome here. The ALJ assessed an RFC limited to simple, routine tasks. AR 20. DOT characterizes document specialist as a Level 3 Reasoning occupation. DOT at 249.587-018, 1991 WL 672349. Thus, there was an inherent conflict the ALJ was required to reconcile and explain. *Zavalin*, 778 F.3d at 846-47. She did not do so.

Defendant offers two responses. First, he notes that Plaintiff here has a higher level of education (Bachelor of Science in Kinesiology) than the claimant did in *Zavalin* (modified high school diploma after having been in special education classes). However, *Zavalin* explained that the DOT classifications have to do with ability, not just education, 778 F.3d at 847, and it is obvious from the record that Plaintiff's mental condition has been in decline for some time. Plaintiff's prior college degree therefore does not let the Court infer what the ALJ would have concluded about Plaintiff's ability to perform a Level 3 Reasoning occupation from March 15, 2013 to December 31, 2014. The ALJ's finding that Plaintiff's RFC was limited to simple, routine tasks suggests that a Level 3 Reasoning job was beyond his ability, yet the ALJ determined that document specialist was an available job. The prior college degree does not explain away this contradiction.

Second, Defendant argues that the ALJ found that Plaintiff had only moderate limitations in understanding, remembering information and concentration, persistence and pace, and that the ALJ found that Plaintiff's mental health treatment did not reveal significant mental impairments other than depression and anxiety. While that is true, the ALJ then went on to find an RFC limited to simple, routine tasks. Thus, this argument also does nothing to explain the contradiction between the Plaintiff's RFC and the identification of a Level 3 Reasoning job.

Moreover, a larger problem with Defendant's arguments is that they are post hoc

11

rationalizations. "[W]e are constrained to review the reasons the ALJ asserts and cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Zavalin*, 778 F.3d at 848 (citation and quotation marks omitted). The ALJ did not explain the inherent tension between Plaintiff's RFC and the reasoning requirements of the document specialist job, and Defendant cannot create that explanation in this Court.

### b. Addressing Clerk

Plaintiff contends that the job of addressing clerk is obsolete and no longer held in significant numbers. DOT states that an addressing clerk "[a]ddresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail." DOT at 209.587-010, 1991 WL 671797. The job description was last revised in 1991, which is 28 years ago. *See id*. The VE's testimony that 100,000 such jobs still exist in the modern American economy, AR 70, is simply impossible to believe. In this era of computerization and automation, it is questionable whether there is even one such job in the regional or national economy. *See Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (jobs that are "very rare" or "generally unavailable" do not satisfy the Commissioner's burden to show there exists other work in significant numbers). A VE's testimony can be substantial evidence in support of the ALJ's decision only if a reasonable mind would accept the VE's testimony. *See Farias v. Colvin*, 519 Fed.Appx. 439, 440 (9th Cir. 2013) ("A reasonable mind would not accept the VE's testimony that there are 3,600 head dance hall hostess positions in the local economy and 342,000 in the national economy. . . . The ALJ's conclusion is therefore not supported by substantial evidence.").

The Court's decision in *Scott v. Colvin*, 2015 WL 11438598 (N.D. Cal. Dec. 9, 2015), is instructive. In that case the VE testified that there were a significant number of "press clippings cutter/paster jobs in the regional economy." *Id*. at *12. DOT defined that job as "clipping; trimmer, press clippings. Tears or cuts out marked articles or advertisements from newspapers and magazines, using knife or scissors. Records name of publication, page and location, date, and name of customer on label, and affixes label to clipping." *Id*. at *12-13. The Court observed that "the use of computers has become increasingly common in the work environment" and rejected the VE's testimony as unreliable. *Id*. Here, too, addressing clerk as defined by DOT is a pre-

12

computer job that does not likely exist in significant numbers anymore.

The Court in *Skinner v. Berryhill*, 2018 WL 1631275 (C.D. Cal. April 2, 2018), specifically considered the job of addresser. The Court explained that "it is not unreasonable to assume that the occupation of 'addresser,' which – as described by the DOT – provides for addressing envelopes *by hand or by typewriter*, is an occupation that has significantly dwindled in number since 1991 in light of technological advances." *Id*. at *6 (emphasis original). "That being the case, a reasonable mind would not accept the VE's testimony that there are over 3,000 such positions in the region of California alone, or even that there are over 10,000 in the national economy," *id*. at *6 – let alone the VE's testimony in this case that there are *ten times* that many such jobs in the national economy. "[C]ommon sense . . . casts doubt on the reliability and credibility of the VE's testimony and on the ALJ's reliance on that testimony to conclude that the occupation of addresser currently exists in significant numbers." *Id*. at *8; *see also Hermann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014) (Posner, J.) ("If the only jobs that the applicant is physically and mentally capable of doing no longer exist in the American economy (such as pin setter, phrenologist, leech collector, milkman, pony express rider, and daguerreotypist), the applicant is disabled from working, and likewise, as a realistic matter, if there is an insignificant number of such jobs.").[4]

Accordingly, there is not substantial evidence that the occupation of addressing clerk exists in significant numbers either regionally or nationally.

### c. Semiconductor Loader

The ALJ determined that Plaintiff's RFC required him to "avoid concentrated exposure to hazards." AR 20. It is not clear what exactly this meant. The statement came at the end of a long paragraph summarizing Plaintiff's physical condition, including his chiropractic and acupuncture treatments and long-term opioid treatment for pain. After providing this summary, the ALJ stated: "As a precaution, the undersigned finds the claimant further limited to performing only occasional

---

[4] Defendant asserts that the Commission can rely on the DOT for reliable job information. However, the DOT contains no job data for addresser. *See Scott*, 2015 WL 11438598 at *13 (observing that "the DOT does not include job data").

1   postural activities, and must avoid concentrated exposure to hazards." AR 22.  Perhaps some
2   more indication of what this meant came in the ALJ's hypothetical to the VE that the hypothetical
3   person "must avoid concentrated exposure to hazards such as unprotected heights and moving
4   machinery."  AR 69.  The ALJ's concern did not seem to be limited to Plaintiff operating moving
5   machinery, since the RFC limitation extended to being around moving machinery, and
6   unprotected heights is an altogether different concern.  Perhaps the concern was that Plaintiff's
7   pain and pain management could be distractions at work, so he shouldn't be near anything
8   dangerous.

9   Before this Court, Plaintiff observes that the DOT description of semiconductor loader
10  states that the worker is exposed to toxic caustic chemicals "[o]ccasionally," meaning for up to
11  one-third of the workday.  DOT at 726.687-030, 1991 WL 679637.  Exposure to toxic, caustic
12  chemicals is a hazard.  SSR 96-9p, 1996 WL 374185, *9 (S.S.A. 1996).

13  As with the document specialist job described above, there seems to be a tension between
14  the RFC requirement that Plaintiff not be exposed to concentrated hazards and the DOT job
15  description, which requires exposure to hazards, and there is no explanation by the ALJ or the VE.
16  *See Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) ("If the expert's opinion that the
17  applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the
18  [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to
19  decide if the claimant is disabled.").  The RFC limitation does say that Plaintiff must avoid
20  "concentrated" exposure to hazards, whereas the DOT description says that the hazard exposure is
21  "[o]ccasional[]" for this job, meaning up to one-third of the day.  But "[o]ccasional[]" seems to
22  describe how much of the day presents an exposure to hazards.  "Concentrated" seems to describe
23  the intensity of the hazard.  When the ALJ told the VE that the hypothetical person "must avoid
24  concentrated exposure to hazards such as unprotected heights and moving machinery," he seemed
25  to be saying that unprotected heights and moving machinery are too dangerous for the person to be
26  around and cannot be part of his job.  He did not seem to be saying that the hypothetical person
27  can spend one-third of his day exposed to unprotected heights or moving machinery.

28  There seems to be a conflict between the RFC requirement to avoid concentrated hazards

14

and the DOT description of semiconductor loader. Absent an explanation from the ALJ about how that apparent conflict can be resolved, the Commissioner has not met his burden to show that this occupation is available to Plaintiff.

**D.      Dr. Marat's Medical Opinion[5]**

Dr. Marat opined that Plaintiff could stand or walk less than two hours per workday and sit for up to four hours per workday. AR 1702. Based on those limitations alone, the VE testified that a hypothetical individual could not perform the jobs of document specialist, addressing clerk or semiconductor loader. AR 71. Dr. Marat also opined that Plaintiff would need unscheduled breaks two to three times per day for five to ten minutes for each break. AR 1702. The VE testified that a hypothetical individual with that limitation could not perform any work. AR 71-72. Accordingly, had the ALJ fully credited Dr. Marat's opinions, disability would have been established.

However, the ALJ afforded only partial weight to Dr. Marat's opinions. AR 22. Plaintiff argues that the ALJ erred because she failed to articulate specific and legitimate reasons for doing so. Pl.'s Mot. at 11. Defendant argues that the ALJ properly discounted Dr. Marat's opinions. Def.'s Mot. at 7.

**1.      Legal Standard**

When determining whether a claimant is disabled, the ALJ must consider each medical opinion in the record together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *King v. Berryhill*, 2018 WL 4586726, at *11 (N.D. Cal. Sept. 25, 2018). In deciding how much weight to give to any medical opinion, the ALJ considers the extent to which the medical source presents relevant evidence to support the opinion. 20 C.F.R. § 416.927(c)(3). Generally, more weight will be given to an opinion that is supported by medical signs and laboratory findings, and the degree to which the opinion provides supporting explanations and is consistent with the record as a

---

[5] Rules regarding the evaluation of medical opinion evidence were recently updated, but the updates were made effective only for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017). As Plaintiff's claim was filed on July 15, 2014, the Court evaluates the medical opinion evidence in his case under the older framework as set forth in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) and in Social Security Ruling 96-2p.

15

1 whole. 20 C.F.R. § 416.927(c)(3)-(4).

2 In conjunction with the relevant regulations, the Ninth Circuit "developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527). Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "By rule, the Social Security Administration [SSA] favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527). If a claimant has a treatment relationship with a provider, and clinical evidence supports that provider's opinion and is consistent with the record, the provider will be given controlling weight. 20 C.F.R. § 416.927(c)(2). "The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

In the Ninth Circuit, an ALJ must provide specific and legitimate reasons for discounting a treating physician's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ "complied with *Magallanes* and provided specific and legitimate reasons for rejecting [the treating doctor's] opinion"); *Magallanes*, 881 F.2d at 751 (an ALJ sufficiently discounts a treating opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings") (citation omitted).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [SSA] considers specified factors in determining the weight it will be given." *Orn*, 495 F.3d at 631. "Those factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)(i)-(ii)).

> Additional factors relevant to evaluating any medical opinion, not

16

> limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the [Social Security] Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record.

*Id.* (citing 20 C.F.R. § 404.1527(d)(3)-(6)). Nonetheless, even if the treating physician's opinion is not entitled to controlling weight, it is still entitled to deference. *See id.* at 632 (citing SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)).[6] "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p at *4.

### 2. Analysis

Here is the ALJ's complete explanation why for she gave Dr. Marat's opinions only partial weight:

> The undersigned gives partial weight to the opinion of Dr. Marat because it is not consistent with the record as a whole. There is no support in the record for the extreme sitting restriction. Furthermore, the period at issue, prior to the claimant's date last insured, was essentially before the time the claimant began treating with Dr. Marat (see, for example, Ex. B4F/88, 89). Dr. Marat opined that the restrictions have existed for "at least two years or more" but did not give an explanation of any specific date within the period at issue.

AR 22.

Let's break this down:

• "*The undersigned gives partial weight to the opinion of Dr. Marat because it is not consistent with the record as a whole.*"

This reason is not specific. It is just a gesture in the direction of the administrative record. "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of

---

[6] "[Social Security Rulings] do not carry the force of law, but they are binding on ALJs nonetheless." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see* 20 C.F.R. § 402.35(b)(1). The Ninth Circuit defers to the rulings unless they are "plainly erroneous or inconsistent with the Act or regulations." *Chavez v. Dep't of Health and Human Serv.*, 103 F.3d 849, 851 (9th Cir. 1996).

17

specificity our prior cases have required . . ." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).

- "*There is no support in the record for the extreme sitting restriction.*"

This statement is untrue. Dr. Marat was Plaintiff's treating physician, who treated him 6-8 times over a two-year period. Her status as his treating physician *is* support for her opinion. Further, Plaintiff's testimony at the hearing is also support in the record for the sitting restriction. AR 51, 56.

This is not to say that the ALJ was required to accept the sitting limitation. Rather, if the ALJ chooses to disregard a treating physician's medical opinion, "he must set forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." *Embrey*, 849 F.2d at 421 (citations and quotation marks omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*. (citation and quotation marks omitted). Here, the ALJ's decision does not set out any conflicting evidence, or if the ALJ thought any of the evidence discussed was conflicting, she did not so state her interpretation.

Defendant says there is conflicting evidence identified in the decision, namely, that the ALJ found that Plaintiff was able to bake sacramental bread for his church for a couple hours at a time, he volunteered at church, he watched documentaries or spent time on his computer, and he walked his dog for a mile. However, baking bread does not entail continuous activity over a couple of hours (you let the dough rise, you put it in the oven, and so on). The ALJ made no findings, and there is no evidence to suggest, Plaintiff's volunteering at church, watching documentaries, spending time on his computer, or walking his dog for a mile means that he can sit for more than four hours in an eight-hour day. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.")

Further, aside from the sitting limitation, the ALJ did not articulate any reason for rejecting Dr. Marat's other limitations, including the need for unscheduled breaks, which the VE testified

18

ruled out any employment. *Cf. Dale v. Colvin*, 823 F.3d 941, 945 (9th Cir. 2016) (in the context of a lay witness's testimony, rejecting one opinion does not justify discounting all opinions, where the opinions are different).

- "*Furthermore, the period at issue, prior to the claimant's date last insured, was essentially before the time the claimant began treating with Dr. Marat (see, for example, Ex. B4F/88, 89).*"

This statement is mostly true but partially false. It is also not legitimate. As noted above, Dr. Marat began treating Plaintiff in November 2014, which is before the Plaintiff's date last insured of December 31, 2014. However, it is true that most of Dr. Marat's treatment of Plaintiff occurred after December 31, 2014. AR 1700.

But so what? There is no requirement that the treating physician personally witness the onset of disability during the time the claimant was insured. Rather, "[w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. . . . In such cases, it will be necessary to *infer* the onset date from the medical and other evidence that describe the history and symptomatology . . ." SSR 83-20, 1983 WL 31249, *2 (S.S.A. 1983) (emphasis added). Indeed, "[i]n some cases, it may be possible, based on the medical evidence *to reasonably infer* that the onset of a disabling impairment(s) occurred *some time prior to the date of the first recorded medical examination*." *Id.* at *3 (emphasis added). Here, Dr. Marat started treating Plaintiff before the date last insured and treated him 3-4 times a year over the next two years before she submitted her opinions on his functional limitations. The ALJ did not provide specific and legitimate reasons why Dr. Marat could not infer an earlier onset of disability.

- "*Dr. Marat opined that the restrictions have existed for 'at least two years or more' but did not give an explanation of any specific date within the period at issue.*"

This is also not a specific and legitimate reason to give Dr. Marat's opinion only partial weight. As noted above, with progressive impairments – as Plaintiff's are here – it is sometimes impossible to establish a precise onset date.

In summary, the ALJ did not provide specific and legitimate reasons for giving only partial

19

weight to Dr. Marat's opinions.

## VI. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion and **DENIES** Defendant's cross-motion. The Court **REMANDS** this case to the Commissioner for further proceedings. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: August 12, 2019

THOMAS S. HIXSON
United States Magistrate Judge